RENDERED:  MARCH 19, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0362-MR

CORA ANN REDMOND AND JERRY WAYNE
REDMOND                                                       APPELLANTS


APPEAL FROM BELL CIRCUIT COURT
v.              HONORABLE ROBERT V. COSTANZO, JUDGE
ACTION NO. 16-CI-00381


ASHLEY WITT FLANARY                                           APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, MCNEILL, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Cora Ann Redmon and Jerry Wayne Redmon

("Appellants") appeal from four orders of the Bell Circuit Court denying their

motion to modify custody and granting in part a motion to modify visitation.[1]

They argue that the circuit court erred in failing to make Appellants the primary

residential custodians of child "N.R."[2] In the alternative, they request that the

matter be remanded for findings as to whether the relocation of Ashley Witt

Flanary ("Appellee"), her alleged negligence, and other factors warrant a

modification of primary residential custody. For the reasons stated below, we find

no error and affirm the orders on appeal.

## **FACTS AND PROCEDURAL HISTORY**

In the interest of judicial economy, we adopt the factual and

procedural recitation rendered by a panel of this Court in the previous and related

appeal of *Redmond v. Flanary*, No. 2019-CA-000070-ME, 2020 WL 1074786 (Ky.

App. Mar. 6, 2020). The panel stated:

> L.R. and N.R. were born to Kendra and Brian
> Redmond during their marriage. L.R. was born in 2002;
> N.R. was born in 2014. Kendra and Brian also had a
> third child, K.R., a girl, who was born in 2012.
> Tragically, on November 7, 2016, Kendra, Brian, and
> K.R. were killed in an automobile accident.
>
> A week after the accident, Cora and Jerry Redmond,
> the children's paternal grandparents ("Grandparents")
> filed a petition seeking custody of L.R. and N.R. in Bell

---

[1] Order Overruling Motion to Alter, Amend or Vacate entered February 13, 2020; final Order entered January 29, 2020; and interlocutory Orders entered October 10, 2019, and February 4, 2019.

[2] We will use the initials of the minor children.

Circuit Court. Therein, Grandparents alleged that they "had care, custody and control of [N.R. and L.R.] for approximately two (2) years and [met] the requirements for being considered *de facto* custodians." They further alleged that the children were placed with them by the Department for Community Based Services ("DCBS"). Grandparents sought an order granting them immediate temporary emergency custody of both children, and thereafter an award of permanent custody of the children.

On November 18, 2016, before the trial court had the opportunity to rule on Grandparents' petition, the children's maternal aunt, Ashley Witt Flanary ("Aunt"), filed an objection to Grandparents' petition along with her own petition seeking custody of the boys. Aunt disputed Grandparents' allegations regarding *de facto* custodianship. Aunt noted that Kendra and Brian divorced the year before their deaths, and that the dissolution decree entered of record on October 14, 2015, awarded sole custody of the children to Kendra. Aunt alleged that it would be in the best interests of both L.R. and N.R. for her to be awarded permanent sole custody; she requested the trial court to order the Cabinet for Health and Family Services ("Cabinet") to commence an investigation and make a recommendation regarding temporary emergency custody of the Children.

On December 9, 2016, after interviewing L.R., the trial court awarded temporary joint custody of L.R. and N.R. to both Grandparents and Aunt. Grandparents were designated as the temporary primary residential custodians of the older child, L.R., and Aunt was designated as the temporary primary residential custodian of the younger child, N.R. Aunt was given timesharing with L.R., and Grandparents were given timesharing with N.R.

After several delays, the trial court held an evidentiary hearing on March 29, 2017. Several witnesses testified at the hearing. The evidence established that Grandmother

took the children to the doctor and to church, and that Kendra had authorized Grandmother to seek medical care for them. Grandmother testified that Kendra thought of her as her preferred babysitter while she worked, and frequently left the children in her care. L.R. told the trial court that he had lived with Grandparents for much of his life, and that he did not want to live anywhere else. L.R. further explained that he did not like visiting Aunt; it made him nervous and sick. Aunt testified about her ability to care for the children, including the fact that she had a child of her own that was about the same age as N.R.

On May 2, 2017, the trial court entered its first findings of fact, conclusions of law, and order of custody and visitation. The court found that although Grandparents provided caregiving and financial support, they had not established themselves as primary caregivers and thus did not qualify as *de facto* custodians. By the same token, the trial court found that although Kendra and N.R. lived with Aunt for a period of time following the dissolution, Kendra did not abdicate her parental role. At most, Aunt parented alongside Kendra, which is not sufficient to establish *de facto* custodianship.

Ultimately, the trial court concluded that the best interest of the children would be for the temporary custody and timesharing arrangement that was already in place to be made permanent. Grandparents and Aunt were granted joint legal custody of the Children. Grandparents were designated as L.R.'s primary residential custodian and Aunt was designated as N.R.'s primary residential custodian. The parties were to adhere to a timesharing schedule designed to allow the brothers to spend time with each other.

Grandparents filed a motion to modify on May 4, 2017. Therein, they argued that L.R. should not be forced into spending time with Aunt via a timesharing schedule. Grandparents attached medical records to their

motion indicating that a physician had diagnosed L.R. with anxiety caused by his parents' deaths and the ensuing events regarding his custody. On May 23, 2017, the trial court entered an order temporarily suspending L.R.'s timesharing with Aunt with the matter to be revisited during a hearing on July 13, 2017.

Prior to the hearing, Aunt filed an emergency motion seeking to suspend Grandparents' timesharing with N.R. Aunt alleged that N.R. exhibited behavioral outbursts that lasted at least a couple of days after spending time with Grandparents; that Grandparents took N.R. to the lake knowing he had been diagnosed with a double ear infection and strep throat; and that Grandparents allowed N.R. to associate with unsavory individuals and witness inappropriate behaviors during their frequent lake trips.

On August 2, 2017, "seeking to put an end [to the conflict] and to try to bring closure to the parties," the trial court ordered both children to participate in psychiatric evaluations after which the provider was to make a recommendation to the court regarding custody and timesharing of both children. The trial court then suspended all timesharing until further order. Unfortunately, the trial court's order did not resolve the parties' conflict, even temporarily.

On January 24, 2018, Grandparents filed a motion seeking sole custody of L.R. and N.R. and for visitation between the brothers to commence immediately. In support of their motion, Grandparents filed an affidavit from L.R.'s treating psychologist, Dr. Sandra Nantz. L.R.'s psychologist recommended against L.R. visiting with Aunt at this time; however, she did believe it was imperative for L.R. to see his younger brother, N.R. To this end, Dr. Nantz averred:

> [L.R.] lost his mother, father and younger
> sister in a tragic vehicular/tractor-trailer
> accident. Then to be split from his younger

-5-

brother by the placement in a separate home and then denied contact with [N.R.] is compounding the bereavement, unconscionable and not based upon any generally accepted principles of child rearing, child psychology, coping with death of a parent or parents or death of a sibling. This estrangement is worse than another death to [L.R.] He is unable to heal or obtain closure. My recommendation is immediate reunification of the boys for visitation on a consistent basis at neutral locations. At this point in time, I do not recommend [L.R.] having visitation at the residence of [Aunt]. In addition, I recommend the adoption of certain rules of decorum during visitation, *i.e.*, no discussion of the case, no discussion of other parties or their families, no disparaging remarks etc.

In response to the timesharing/visitation portion of Grandparents' motion, the trial court entered an "agreed temporary order" restarting timesharing. The order set forth a schedule for the parties to exercise timesharing with the child not in their residential custodianship and required all timesharing to be supervised. The order did not modify custody, meaning Grandparents and Aunt continued to share joint legal custody of the boys with Grandparents acting as the primary residential custodian of L.R. and Aunt acting as the primary residential custodian of N.R. Subsequently, in an effort to resolve the outstanding motions regarding custody, the trial court ordered Dr. David Feinberg to conduct a custodial evaluation of all involved parties (Grandparents, Aunt, L.R., and N.R.) and to report his findings and recommendations to the Court.

Before Dr. Feinberg could complete the evaluations and recommendation, the parties became embroiled in another dispute. On August 10, 2018, Grandparents filed

a motion seeking custody of both boys and to hold Aunt in contempt for missing two timesharing visits. On September 14, 2018, Aunt responded by filing her own motion styled "notice of withholding and motion to suspend visitation." In support of her motion, Aunt cited N.R.'s behavioral issues after visits with Grandparents and pointed out that after N.R. returned from his most recent visit she noticed contusions and N.R. complained of body aches and other physical ailments resulting in an ongoing investigation by the Cabinet.

On October 19, 2018, the trial court took up the motions as related to N.R.'s temporary timesharing. The trial court denied Aunt's motion to suspend timesharing with Grandparents and ordered the missed visits to be made up with additional time. All other motions were placed in abeyance pending conclusion of the Cabinet's investigation. On November 6, 2018, Grandparents filed a report from the Cabinet indicating that it could not substantiate any abuse of N.R. by Grandparents.

Dr. Feinberg's report was completed at the end of October 2018 and delivered to the Court. Dr. Feinberg evaluated L.R., N.R., Grandparents, Aunt, and Aunt's husband. Dr. Feinberg's work with the parties was extensive, and his report is very detailed. He noted shortcomings with regard to all the adults. These shortcomings included mental health concerns, grief-related issues, and intellectual challenges. By the same token, he recognized positive parenting attributes in all the adults, including love and affection for the children and a desire to attend to their needs. He noted that Grandparents had been proactive in helping L.R. receive additional tutoring at school, and that Aunt had been proactive in recognizing and seeking intervention for some development delays in N.R. Ultimately, Dr. Feinberg recommended that Grandparents have custody of L.R., and Aunt and her husband have custody of N.R. Dr. Feinberg recommended against forcing L.R. to visit with Aunt and her husband; however, he did believe it

was important for the brothers to see one another and indicated that this could be accomplished through N.R. visiting with Grandparents every other weekend.

After receiving Dr. Feinberg's report, the trial court held a final hearing on November 7, 2018. The purpose of the hearing was to resolve all pending motions dating back to Grandparents' May 4, 2017 motion to modify. As part of the hearing, Grandparents called Dr. Nantz to testify. Dr. Nantz disagreed with Dr. Feinberg's recommendation regarding the children residing in separate homes for most of the time. In her professional opinion, children should always stay together unless the situation warrants separation, such as in cases of physical or sexual abuse.

On December 20, 2018, the trial court entered its detailed findings of fact, conclusions of law and custody decree. After reviewing and summarizing all the evidence and testimony, the trial court concluded as follows:

> Due to the tragic and untimely events which [led] to the death of not only [L.R. and N.R.'s] parents, but [also] their sibling, [K.R.], this Court FINDS that it is clearly in the children's best interest that [they] maintain significant and sustained contact and communication with the remaining family members of [their parents]. Both [Grandparents] and [Aunt] each in their own respective way have much to offer [L.R. and N.R.] as they navigate to adulthood without the benefit of their parents. And what an injustice and a tragedy will result if [Grandparents] and [Aunt] cannot set aside their self-serving and selfish interests to protect the best interest of these children. Both [Grandparents] and [Aunt] are "blood" relation of these "orphaned children." The

record will establish that the parties, both [Grandparents] and [Aunt], have resisted, if not completely dismissed, any attempts to work together. A sad reality in that these children are entitled to better especially in light of the horrific events which have placed them the subject of this action.

This Court on May 2, 2017, entered its Findings of Fact, Conclusions of Law, and Order of Custody and Visitation following a lengthy hearing. [Grandparents] on May 4, 2017 filed their Motion to Modify said Findings and the [Aunt] on May 19, 2017, filed her Objection to [Grandparents'] Motion to Modify the Court's Findings . . . . The Court FINDS that many of the issues and conflicts are the making of [Grandparents and Aunt], not the children. [L.R.] is well-integrated into [Grandparents'] house and family. This integration began prior to the deaths of the children's parents. The record established that at the time of the parents' deaths, the mother [Kendra], had previously been granted sole custody of both [L.R. and N.R.]. Kendra and [N.R.] were living/staying with her sister, [Aunt]. The record further established that [L.R.] spent the majority of his life in and at the home of [Grandparents], [who provided] for most if not all of [L.R.'s] needs. The Court FINDS that [L.R.] is well-integrated into [Grandparents'] house and family and that [N.R.] is well-integrated into [Aunt's] house and family. The Court can find no cause to disturb its earlier Order of Custody. The Court remains persuaded, under the

authority of KRS[3] 403.270, 403.340, 403.350, and all other applicable law, that the best interests of [L.R. and N.R.], are best served by denying [Grandparents'] Motion for Sole Custody, or Equal Joint Custody and IT IS SO ORDERED. The Court does FIND sufficient cause to modify the [timesharing] schedule previously set forth in its May 2, 2017 Findings of Fact, Conclusions of Law, and Order of Custody. [L.R. and N.R.] are brothers. They are entitled to have the opportunity to see one another as much as possible. It is the responsibility of and should be the desire of the parties to take any and all steps necessary to facilitate same. However, both [Grandparents and Aunt] have made what should be an easy task nearly impossible. Their obvious and open [disdain] for one another appears at times to be more important than what is in the best interest of these children. The Court FINDS that the best interest of [L.R. and N.R.] shall be best served by the Visitation Schedule and Timesharing Rules attached and incorporated hereto and IT IS SO ORDERED. Child Support is not awarded to either [Grandparents or Aunt] and IT IS SO ORDERED.

. . . .

1. [Grandparents] are granted joint custody of [L.R. and N.R.]

2. [Aunt] is granted joint custody of [L.R. and N.R.]

[3] Kentucky Revised Statutes.

-10-

> 3. [Grandparents] shall be designated as primary residential custodian of [L.R.]
>
> 4. [Aunt] shall be designated as primary residential custodian of [N.R.]
>
> 5. [Grandparents and Aunt] shall each receive [timesharing] as set forth in the Visitation Schedule and Timesharing Rules herein attached.
>
> 6. [Grandparents and Aunt] are not to interfere with the visitation time between the minor children.
>
> (R. 728-30). The accompanying timesharing schedule provided Aunt timesharing with L.R. on the first and third weekends of each month as follows: two hours on Friday evening, three hours on Saturday afternoon, and two hours on Sunday evening. Grandparents were provided with timesharing of N.R. in gradually increasing phases working up to timesharing every other weekend from Friday afternoon until Sunday evening and weekly for three hours on Thursday evenings. The schedule was set to maximize the brothers' time with each other.

*Id.* at *1-*5 (footnote omitted).

The panel of this Court affirmed the decision of the Bell Circuit Court. Thereafter, the parties filed competing motions to modify the underlying decision. Appellants moved to: 1) enforce an alleged settlement agreement between the parties concerning time-sharing; 2) make a ruling on serious endangerment in relation to testimony at an October 2, 2019 hearing that N.R. walked away from Appellee's residence on two occasions; and 3) modify custody

-11-

or time-sharing based upon Appellee relocating her home about 100 miles away to take a new job. Appellee moved to modify time-sharing based on her relocation.

A hearing on the motions was conducted on December 5, 2019, after which the circuit court rendered an order on January 29, 2020, denying Appellants' motions to modify custody. The parties' respective motions to modify time-sharing were granted in part, and denied in part.

Appellants then moved to alter, amend, or vacate the January 29, 2020 order. In support of the motion, they again argued that N.R. was seriously endangered by Appellee's poor supervision which allowed him to walk away on two occasions from Appellee's home during a period when N.R. was in Appellee's care. On February 13, 2020, the circuit court determined in relevant part that the two instances where N.R. left Appellee's home unattended were investigated by those charged with such duties, resulting in the investigative agency making no finding of serious endangerment, neglect, or abuse. The court denied the motion to alter, amend, or vacate, and this appeal followed.

## ARGUMENTS AND ANALYSIS

Appellants first argue that the Bell Circuit Court committed reversible error in failing to designate them as the primary residential custodians of N.R. after he walked down a busy road twice while in Appellee's custody. Appellants direct our attention to the Bell Circuit Court's orders entered on October 10, 2019,

-12-

December 20, 2018, and February 13, 2020, which denied a change in custody on this issue.[4] Appellants take issue with the circuit court's determination that Appellee's failure to properly supervise N.R. did not constitute serious endangerment sufficient to justify a change in custody. Appellants assert that it is in the best interest of N.R. that he live primarily with his grandparents who have been together for 33 years in a stable home, where nothing bad has happened to him, and where his only sibling lives. The focus of their argument is their claim that the Bell Circuit Court erred in finding no "serious endangerment" per KRS 403.340(3)(d) to support a change in custody. Appellants argue that N.R.'s act of leaving Appellee's home unsupervised on two occasions constitutes serious endangerment. They seek an opinion reversing the circuit court's orders on this issue with instructions to award Appellants primary residential custody of N.R.

A trial court may not modify a prior custody decree unless it finds a change in circumstances of the child or his custodian, and that modification is in the best interests of the child. KRS 403.340(3). In determining whether a change has occurred and modification is in the child's best interests, the court shall

---

[4] There is some question as to whether the October 10, 2019 order is interlocutory, or final and appealable. The order adjudicated all matters then before the circuit court, but does not contain language that it is final and appealable. "A final and appealable judgment is a final order adjudicating all of the rights of the parties in an action or proceeding . . . ." Kentucky Rules of Civil Procedure ("CR") 54.01. We find as moot any question as to whether the October 10, 2019 order is final and appealable, as it was subsumed in final and appealable orders entered on January 29, 2020, and February 13, 2020.

-13-

consider:  a) whether the custodian agrees to modification; b) the child's integration into the family of the petitioner; c) the factors set out in KRS 403.270(2) to determine the best interests of the child; d) whether the child's present environment seriously endangers his physical, mental, moral, or emotional health; e) whether the likely harm of a change is outweighed by the advantages of a change; and f) whether the custodian has placed the child with a de facto custodian. KRS 403.340(3).  In determining whether the child's present environment may seriously endanger his physical, mental, moral or emotional health, the court considers the interrelationship of the child with the parties, the mental and physical health of the parties, any substantial failure to observe provisions of the custody decree affecting the child, and any domestic violence and abuse.  KRS 403.340(4).

Appellants' argument centers on KRS 403.340(3)(d), to wit, whether N.R.'s act of leaving Appellee's house on two occasions, without supervision, evinces a present environment that seriously endangers his physical, mental, moral, or emotional health.  In considering this issue, the circuit court relied on supportive affidavits previously filed with the court as required by KRS 403.340(2), as well as the written and oral arguments of the parties.  While acknowledging that it was clearly inappropriate for N.R. to walk away from Appellee's residence, the circuit court relied on the Cabinet's investigation of the matter which resulted in no finding of dependency, neglect, or abuse.  In addition, the court expressly

considered the other statutory factors including N.R.'s interaction with the parties, and their physical and mental health.

On appeal of a custody determination, the test is not whether the facts could have supported a different outcome, but whether the trial court abused its discretion. *Eviston v. Eviston*, 507 S.W.2d 153 (Ky. 1974). CR 52.01 applies to child custody proceedings, *Griffith v. Allen*, 472 S.W.2d 253, 254 (Ky. 1971), and provides that the court's findings shall not be set aside unless they are clearly erroneous, with due regard given to the trial court to judge the credibility of the witnesses.

Having closely examined the record and the law, we find no abuse of discretion. When Appellants became aware that N.R. had walked out of Appellee's house on two occasions without supervision, the Cabinet investigated the matter, did not return a finding of dependency, abuse, or neglect, and closed its investigation. This finding, taken alone, forms a sufficient basis for the circuit court's conclusion that N.R. is not seriously endangered. Further, the court expressly considered the Cabinet's action in conjunction with the other statutory factors including N.R.'s interaction with the parties, and their physical and mental health. The record supports the Bell Circuit Court's conclusion on this issue, and we find no error.

Appellants also argue that the circuit court erred in failing to designate them as the primary residential custodians of N.R. or, alternatively, to modify time-sharing after Appellee relocated. They assert that the circuit court failed to make any findings that the relocation was in N.R.'s best interests and argue that Appellee did not meet her burden of proving that the relocation was in N.R.'s best interests. Appellants assert that N.R.'s best interests are not furthered by the relocation and that he would be better off living with his grandparents and brother rather than his aunt, uncle, and cousin in a new town. Accordingly, they argue that Appellee's relocation supports an award of primary residential custody of N.R. in favor of Appellants.

Again, the question on appeal is not whether the facts could have supported a different outcome, but whether the trial court abused its discretion. *Eviston*, *supra.* In considering N.R.'s best interests, the circuit court noted that the amount of time-sharing remained unaffected after Appellee's relocation.[5] While it did not expressly consider N.R.'s best interests as to either Appellee's desire to relocate nor Appellants' motion to modify primary custody, the substance of the court's analysis was that N.R. would continue to receive the same amount of time with Appellants after the relocation as he did before it. The implication, though

---

[5] The circuit court modified the time-sharing arrangement to accommodate Appellee's relocation, but the amount of time each party received with N.R. was not affected.

not expressly stated, is that N.R.'s best interests were not affected by the relocation. We do not conclude that the Bell Circuit Court abused its discretion on this issue, and accordingly find no error.

Lastly, and in the alternative, Appellants seek a remand for additional findings. "It goes without saying that errors to be considered for appellate review must be precisely preserved and identified in the lower court." *Skaggs v. Assad, By and Through Assad*, 712 S.W.2d 947, 950 (Ky. 1986). As Appellants do not direct our attention to any request for additional findings from the circuit court, and were not so denied, this issue is not ripe for appellate review. Even if this issue is properly before us, the record reasonably supports the circuit court's conclusions that N.R. is not seriously endangered in Appellee's custody, and that Appellee's relocation did not adversely affect N.R. because the amount of time-sharing with his grandparents remained unchanged. We find no basis for remanding for additional findings.

## **CONCLUSION**

The Bell Circuit Court did not abuse its discretion in concluding that N.R. was not seriously endangered in Appellee's custody, nor in finding that N.R. was largely unaffected by Appellee's relocation since the amount of time he spent with his grandparents remained the same. Accordingly, we find no error and affirm the orders on appeal.

ALL CONCUR.


BRIEFS FOR APPELLANTS:        BRIEF FOR APPELLEE:

Marcia Smith                  C. Bishop Johnson
David Smith                    Pineville, Kentucky
Corbin, Kentucky